# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

Case No. 12-80003-Cr-RYSKAMP

**UNITED STATES OF AMERICA,**

vs.

**KESLIN JOSEPH,**

       **Defendant.**
_____/

## REPORT AND RECOMMENDATION AND ORDER CONCERNING DEFENDANT KESLIN JOSEPH'S ADOPTED MOTIONS FROM Case No. 11-80165-Cr-RYSKAMP

THIS CAUSE is before the Court upon the District Court's referrals (DEs 53-55, 57, 64) of DEFENDANT KESLIN JOSEPH'S omnibus motions (DEs 48-50, 52, 63, 74) in **Case No. 11-80165-Cr-RYSKAMP**. A hearing was held on the motions on December 21, 2011.

The Defendant and his co-defendant in **Case No. 11-80165-Cr-RYSKAMP,** Anes Joseph, had been indicted on firearms and firearms exportation charges on September 22, 2011.

The motions were adopted into this case on January 17, 2012, after the Government severed the Defendant from his co-defendant from **Case No. 11-80165-Cr-RYSKAMP**, Anes Joseph, and filed the Indictment charging conspiracy, firearms and firearms exportation charges in the instant case.

## FACTUAL BACKGROUND

The hearing testimony of Homeland Security Investigations Special Agent Anderson Sullivan and Bureau of Alcohol, Tobacco, Firearms and Explosives Special Agent Jaime Morales, established that on August 26, 2011, officers with the United States Customs and Border Protection ("CBP") at the Port of Palm Beach, Florida, in consultation with agents from Homeland Security

Investigations ("HSI") (formerly known as "ICE") conducted an examination of a dump truck outbound for shipment to Haiti. An Original Certificate of Title for the vehicle identified the owner as Anes JOSEPH, brother of the Defendant. A copy of his Florida Driver's License was included with the shipping paperwork. The contents list of items contained on the dump truck listed assorted items, but did not include any reference to firearms. Officers found multiple large barrels on the truck. Packed inside the barrels, officers discovered twelve firearms and assorted ammunition. Each of the guns was wrapped in paper towels and plastic wrap. Seven of the firearms were contained inside a safe. The remaining five firearms were concealed in a wet, brown blanket surrounded by bottles of lotions and shampoos.

HSI agents contacted the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF). An ATF database search of the seized firearms revealed that: (1) Anes JOSEPH bought three of the seized firearms, and (2) Keslin JOSEPH bought six of the seized firearms. ATF records showed additional firearms purchases by both Anes and Keslin JOSEPH. Specifically, the defendant bought twelve Glocks. Anes JOSEPH bought two Glocks.

On September 12, 2011, HSI agents, with the assistance of ATF agents, conducted a joint operation at the Miami Internation Airport based upon information that Anes and Keslin JOSEPH were about to board a flight to Haiti. A search of their checked luggage revealed body armor.

After Anes and Keslin JOSEPH presented their boarding passes to the ticket agent and entered the jetway, HSI and ATF agents asked them to step aside for questioning. They were separately interviewed and their carry-on luggage and personal items were searched in the interview room. Electronic equipment, including two laptops and two cell phones, were contained among this defendant's property. The electronics were seized at the airport and transported that day to the West

Palm Beach HSI office to be examined by an HSI Computer Forensic Analyst ("CFA"). CFA David Malone conducted a forensic examination of the devices on September 14, 2011. The search of this defendant's cell phone revealed evidence relevant to the gun smuggling investigation, including photographs of defendant posing with firearms and a text message inquiring whether this defendant was "still selling Glocks."

DEFENDANT'S MOTION FOR A BILL OF PARTICULARS (DE 48)

Since the motion was filed the Government dismissed the Indictment against this Defendant in **Case No. 11-80165-Cr-RYSKAMP**, and filed an Indictment in the instant case with new details and charges. The Defendant subsequently filed a Second Motion for a Bill of Particulars, which is not yet ripe. In light of this, the Defendant's MOTION FOR A BILL OF PARTICULARS (DE 48) is DENIED without prejudice as moot.

DEFENDANT'S MOTION TO SUPPRESS, REDACT OR SEVER (DE 50)

In light of the Government's decision to sever the DEFENDANT'S MOTION TO SUPPRESS, REDACT OR SEVER (DE 50) is DENIED as moot.

DEFENDANTS' MOTION FOR *BRADY* AND RULE 16 MATERIAL (DE 49)

In light of Government disclosures this motion may be moot, but the DEFENDANTS' MOTION FOR *BRADY* AND RULE 16 MATERIAL (DE 49) is GRANTED within the scope of the Standing Discovery Order.

DEFENDANT'S MOTION TO SUPPRESS STATEMENTS (DE 52)

In light of the Government's concession that it will only seek to introduce the evidence obtained in violation of Defendant's *Miranda* rights to impeach the defendant's contradictory testimony at trial (see *Oregon v. Hass*, 420 U.S. 714, 723-24 (1975); *Harris v. New York*, 401 U.S.

3

222, 226 (1971); *Michigan v. Harvey*, 494 U.S. 344, 350-51 (1990)), this Court RECOMMENDS that DEFENDANT'S MOTION TO SUPPRESS STATEMENTS (DE 52) be DENIED as moot.

DEFENDANT'S MOTION TO SUPPRESS COMPUTER EVIDENCE (DE 74)

In light of the Government's concession that it will only seek to introduce the computer evidence seized to impeach the defendant's contradictory testimony at trial (see *Walder v. United States*, 347 U.S. 62, 65-66 (1954); *United States v. Havens*, 446 U.S. 620, 625-28 (1980)) this Court RECOMMENDS that DEFENDANT'S MOTION TO SUPPRESS COMPUTER EVIDENCE (DE 74) be DENIED as moot.

DEFENDANT'S MOTION TO SUPPRESS CELL PHONE EVIDENCE (DE 63)

A search conducted at a United States border—or the functional equivalent of a border, see *Almeida–Sanchez v. United States*, 413 U.S. 266, 272–73, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973); see also *United States v. Lawson*, 461 F.3d 697, 700 (6th Cir.2006)—is an exception to the Fourth Amendment's warrant requirement. "[S]earches made at the border, pursuant to the longstanding right of the sovereign to protect itself by stopping and examining persons and property crossing into this country, are reasonable simply by virtue of the fact that they occur at the border." *United States v. Flores–Montano*, 541 U.S. 149, 152–53, 124 S.Ct. 1582, 158 L.Ed.2d 311 (2004) (internal quotation marks omitted); see also *United States v. Ramsey*, 431 U.S. 606, 618, 97 S.Ct. 1972, 52 L.Ed.2d 617 (1977). The Supreme Court has explained that an individual's expectation of privacy is diminished at the border, *United States v. Montoya de Hernandez*, 473 U.S. 531, 539–40, 105 S.Ct. 3304, 87 L.Ed.2d 381 (1985).

The border search doctrine applies equally to searches of persons and property exiting the United States as to those entering the country. *See United States v. Hernandez-Salazar*, 813 F.2d

4

1126, 1137-38 (11th Cir. 1987) (noting that "[e]very circuit that has considered the question has ruled that the rationales for the 'border exception' apply both to incoming and outgoing persons and instrumentalities" (citations omitted)). Courts have recognized the value of border searches in the realm of controlling illegal weapons exportation. "[T]he United States's interest in preventing the export of weapons to other countries also implicates the sovereign's interest in protecting itself." *United States v. Boumelhem*, 339 F.3d 414, 423 (6th Cir. 2003).

A border search may occur at the "functional equivalent" of a border– the last practicable location where the person or item could be searched before its passage over the international border. *Almeida-Sanchez v. United States*, 413 U.S. 266, 272-74, 93 S.Ct. 2535, 2539, 37 L.Ed.2d 595 (1973). It would be "'unreasonable' to require federal agents to wait until a suspect boards his airplane to conduct a search." *United States v. Abbouchi*, 502 F.3d 850, 855 (9th Cir. 2007) (*citing United States v. Duncan*, 693 F.2d 971, 977 (9th Cir. 1982)). A border search is valid once the suspect "checked his luggage, obtained his boarding pass, passed through security, and embarked on the ramp to his flight because these acts 'manifest[ed] a definite commitment to leave the United States,' and the search occurred 'in reasonable temporal and spatial proximity to the departure.'" *Id*.

In some circumstances, the government must have reasonable suspicion to perform a search at a border. But those instances generally are confined to "highly intrusive searches of the person," such as strip searches or body cavity searches, see *Montoya de Hernandez*, 473 U.S. at 540 n. 3, 105 S.Ct. 3304, searches carried out in a "particularly offensive manner," or searches that are destructive of property, *Flores–Montano*, 541 U.S. at 152, 154 n. 2, 155–56, 124 S.Ct. 1582; *Lawson*, 461 F.3d at 699–700.

5

The search of the cell phones here qualifies as a border search and does not require reasonable suspicion. "The border search doctrine is not so rigid as to require the United States to equip every entry point– no matter how desolate or infrequently traveled– with inspectors and sophisticated forensic equipment capable of searching whatever property an individual may wish to bring within our borders or be otherwise precluded from exercising its right to protect our nation absent some heightened suspicion." *United States v. Cotterman*, 637 F.3d 1068, 1070 (9th Cir. 2011) (holding as reasonable the search of a laptop detained at the border and transported 170 miles where the search was completed two days later in a government forensic computer laboratory).

Even if reasonable suspicion were required, it was present here. The agents were aware that this defendant and his brother had purchased the firearms seized on their way to Haiti, that they had purchased multiple firearms in the past several months that had not yet been located and that the defendant had body armor in his luggage. This Defendant and his brother were traveling to Haiti, the same destination intended for the seized firearms. It is reasonable to suspect that the Defendant's cell phones contained evidence relevant to the suspected crimes.

Accordingly, this Court RECOMMENDS that DEFENDANT'S MOTION TO SUPPRESS CELL PHONE EVIDENCE (DE 63) be DENIED.

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable United States Senior District Judge Kenneth L. Ryskamp, within three (3) business days after being served with a copy. This Court is expediting any objections to this Report and Recommendation based on the imminent trial date and pursuant to S.D. Fla. Local Mag.J.R.4(a). Failure to file timely objections may limit the scope of appellate review of factual findings contained herein. *See* 28 U.S.C. § 636(b)(1); *R.T.C. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir.

1993); *LoConte v. Dugger*, 847 F.2d 745 (11th Cir. 1988), *Nettles v. Wainright*, 677 F.2d 404, 410 (5th Cir. Unit B 1982) (*en banc*).

DONE and SUBMITTED in Chambers at West Palm Beach in the Southern District of Florida, this 19 day of January, 2012.

*James M. Hopkins*

JAMES M. HOPKINS
UNITED STATES MAGISTRATE JUDGE

Copies to:

Hon. Kenneth L. Ryskamp
Counsel of Record